UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) | No. 1:22-CR-275-24 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| LOUIS STERGO | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

In a superseding indictment, Louis Stergo, along with 22 other defendants, was charged with committing mail and wire fraud. R. 375, Superseding Indictment.[1] The indictment alleges that the Defendants defrauded life insurance companies by submitting a slew of fraudulent statements on policy applications and on death-benefit claims. *Id.* ¶¶ 1–9. Stergo in particular is charged with one count of mail fraud. *Id.* at 13. He now moves to dismiss that charge, arguing that the indictment does not sufficiently allege intent to defraud; the statute of limitations expired before he was charged; and his due process rights have been violated. R. 640, Mot. Because Stergo's arguments all fail, the motion to dismiss is denied.

## I. Background

The superseding indictment in this case charges 23 defendants, including Louis Stergo, with mail and wire fraud. Superseding Indictment at 1. The Defendants allegedly defrauded life insurance companies by submitting policy applications and death-benefit claims containing fraudulent statements. *Id.* ¶¶ 1–9. Specifically, the

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number. Jurisdiction applies under 18 U.S.C. § 3231.

fraud scheme allegedly involved misrepresenting personal information about proposed insured individuals in life insurance policy applications, falsely identifying deceased individuals as the subjects of those policies, and then repeatedly submitting fraudulent death-benefit claims, inducing insurance companies to pay out millions of dollars in benefits based on insureds who in fact had not died. *Id.*

In particular, Stergo is charged with one count of mail fraud. Count Five of the indictment alleges that he violated 18 U.S.C. § 1341 by participating in the fraud scheme and, for the mailing element, "knowingly caus[ing] to be deposited with a commercial interstate carrier … a package … contain[ing] a death benefit check in the amount of $2,001,068.01 for a life insurance policy." *Id.* at 13. Stergo now moves to dismiss that count. Mot.

## II. Legal Standard

To challenge the sufficiency of an indictment, a defendant may file a pretrial motion, so long as the motion can be decided without a trial on the merits. Fed. R. Crim. P. 12(b)(3). An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged …." Fed. R. Crim. P. 7(c)(1). To be legally sufficient, an indictment must accomplish three things: "First, it must adequately state all the elements of the crime charged; second, it must inform the defendant of the nature of the charges so that he may prepare a defense; and finally, [it] must allow the defendant to plead the judgment as a bar to any future prosecution for the same offense." *United States v. Anderson*, 280 F.3d 1121, 1124 (7th Cir. 2002). An indictment should align with the words of the statute, assuming

2

that the statute specifies the elements that constitute the offense. *Id.* The indictment must "provide the defendant with some means of pinning down the specific conduct at issue" but need not include every relevant fact. *Id.* (cleaned up).[2] Courts "review indictments on a practical basis and in their entirety, rather than in a hypertechnical manner." *Id.* (cleaned up).

### III. Analysis

### A. Sufficiency of the Indictment

Stergo begins by arguing that the indictment should be dismissed because it fails to sufficiently allege intent—an essential element of mail fraud. Mot. at 6. That argument misses the mark. "[I]n order for an indictment to be valid it must allege all of the elements which are necessary to constitute a violation of the statute." *United States v. Smith*, 223 F.3d 554, 571 (7th Cir. 2000) (cleaned up). But "in determining whether an essential element of the crime has been omitted from the charge, courts will not insist that any particular word or phrase be used. The element may be alleged in any form which substantially states it." *United States v. Franklin*, 547 F.3d 726, 730–31 (7th Cir. 2008) (cleaned up). Here, the indictment easily clears this bar and sufficiently alleges that Stergo had the requisite intent to defraud.

Intent to defraud means that the defendant "acted willfully and with specific intent to deceive or cheat." *United States v. Pust*, 798 F.3d 597, 600 (7th Cir. 2015)

---

[2]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

(cleaned up). That intent "may be established by circumstantial evidence and by inferences drawn from examining the scheme itself which demonstrate that the scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension." *Id.* at 600–01 (cleaned up). The indictment sets forth both direct accusations and circumstantial facts that, assuming their truth, adequately allege that Stergo had the specific intent to deceive the insurance company. For starters, Count Five alleges that Stergo and the other defendants "*intended* to devise, and participated in a *scheme to defraud* life insurance companies … and to obtain money from those companies by means of materially false and fraudulent pretenses, representations, and promises." Superseding Indictment ¶ 2 (emphases added). This language is essentially an outright allegation of intent to defraud, and sufficiently sets forth that element.

But beyond that, Count Five also incorporates and realleges introductory paragraphs One through Nine of the indictment, which repeatedly state that Stergo had the requisite intent to defraud: Stergo and the other defendants "knowingly misrepresented information" in life insurance policy applications, Superseding Indictment ¶ 4; they submitted periodic payments to keep the insurance policies in force and "[a]t the time of these payments" "knew that … a false and fraudulent claim for death benefits would be submitted under the policy" in the future, *id.* ¶ 5; and that they submitted death benefit claims that falsely stated that the insured individuals had died, "knowing that the insured had in fact not died," *id.* ¶ 7. These accusations together clearly allege that Stergo and the other defendants acted willfully and

4

specifically intended to deceive the insurance companies, inducing them to pay out death benefits.

Stergo also contends that dismissal is warranted because the indictment lacks sufficient detail. Mot. at 11. This argument fails too. An indictment "need not exhaustively recount the facts surrounding a crime's commission." *United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997). Instead, it just needs to have "enough factual particulars" to make the defendant "aware of the specific conduct at issue." *United States v. White*, 610 F.3d 956, 958–59 (7th Cir. 2010). The indictment here satisfies that standard. The incorporated paragraphs explain the scheme: procurement of a life insurance policy with the intent to fraudulently claim its proceeds by lying that the insured had died. Superseding Indictment at ¶ 7(a). For the specific mailing, Count Five alleges that "on or about July 30, 2018," Stergo and others "knowingly caused to be deposited with a commercial interstate carrier, namely Federal Express, a package to be sent and delivered from Company A in Cedar Rapids, Iowa to defendant GINGER ELY in Oak Lawn, Illinois, which package contained a death benefit check in the amount of $2,001,068.01 for a life insurance policy." Superseding Indictment at 13. That provides enough details—including the particular mailing mailed and the date of the mailing—to inform Stergo of the specific conduct at issue. The indictment is not faulty; it sufficiently alleges mail fraud. And it is worth noting that the extensive requirements of pretrial disclosure—including exhibits and witness lists—will provide Stergo with a roadmap of the government's case well before the trial.

5

**B. Statute of Limitations**

Stergo next asserts that the statute of limitations for the mail fraud charge expired before the grand jury returned the indictment. Mot. at 11–12. Not so. Mail fraud has a five-year statute of limitations period, and it begins to run on the date of the charged mailing. 18 U.S.C. § 3282(a); *United States v. Barger*, 178 F.3d 844, 847 (7th Cir. 1999). The indictment alleges that the mailing happened on July 30, 2018, and the grand jury returned the indictment on July 27, 2023. Superseding Indictment at 1, 13. So although it was a close call, the limitations period did not expire before Stergo was charged.

Stergo counters that the evidence the government has produced neither provides an independent basis for conviction nor shows that he committed the charged conduct on July 30, 2018. Mot. at 13. But that is a question for trial, not for the dismissal-motion stage. At this stage, the Court reviews the indictment "on its face, regardless of the strength or weakness of the government's case." *White*, 610 F.3d at 958. So it does not matter (yet) what evidence the government has; all that matters is what is alleged in the indictment. And, again, the indictment was returned within the limitations period and sufficiently alleges mail fraud. Dismissal is not warranted.

**C. Due Process**

Stergo's final argument is that the government violated his due process rights by delaying the bringing of the superseding indictment and by delaying the disclosure of discovery. Mot. at 14–15. As the government correctly notes, to establish a due process violation, Stergo must show that he suffered actual "substantial prejudice"

6

due to the government's conduct and that the government used preindictment delay to gain a "tactical advantage." *United States v. Marion*, 404 U.S. 307, 324 (1971). Stergo shows neither.

Rather than alleging the requisite "specific, concrete" prejudice, *United States v. Sowa*, 34 F.3d 447, 450 (7th Cir. 1994), Stergo merely asserts that he was indicted later than his codefendants and that the "discovery process has been cumbersome and inequitable," Mot. at 15. That is not enough to show that he has suffered due process violations. Moreover, the government has consistently disclosed discovery in a timely manner, giving Stergo plenty of time to prepare his defense. On October 5, 2023—a long 16 months before the trial date—the government made several productions to Stergo, including all of the discovery that the government had produced to Stergo's codefendants. R. 666-1, Resp. Br., Exh. A. Five days later, on October 10, 2023, Stergo's counsel told the government that he was having technical issues in accessing some of the materials. R. 666-2, Resp. Br., Exh. B at 3. The government helped troubleshoot those issues, and around two weeks later (on October 23, 2023), Stergo's counsel sent the government an email saying that he had "received it all," referring to the discovery production. *Id.* at 1–2. Stergo's counsel reached out again on October 25, 2023, about another technical issue with discovery, and again the government helped troubleshoot. R. 666-3, Resp. Br., Exh. C at 1–2. But after replying that he would "try some different things," Stergo's counsel did not contact the government again about problems with the October 5 production. *Id.* at 1. So Stergo had

more than a year to review the government's productions and prepare for trial; that is way more than enough time.

Finally, in September 2024, the government realized that it had not yet produced relevant text messages between Stergo and co-defendant James Mills. R. 666-4, Resp. Br., Exh. D at 4. The government then promptly turned those text messages over to Stergo, and at an attorneys-only conference on September 20, 2024 (still five months before the scheduled trial date), and the parties jointly reviewed those materials. *Id.* at 3–4. So despite the delay in disclosing these text messages, the government still gave Stergo plenty of time to prepare. Plus, these were Stergo's *own* text messages, so he already knew about them prior to the production. The government's disclosures were proper, and Stergo does not and cannot show how he was substantially prejudiced by any delay that occurred. The Court also notes that the pretrial preparation requirements in its standing order from criminal trials will further reduce any burden that Stergo faces in preparing for trial. Under the standing order, the government will provide him with an exhibit chart and its exhibits well before the trial starts on February 18, 2025. Indeed, the exhibit charts are due on January 7, 2025, R. 521, and the government will by necessity disclose the exhibits and charts in advance of even that date, because the parties must confer before their filing. Stergo's due process rights have not been violated. Thus, the motion to dismiss is denied.

## IV. Conclusion

Stergo's motion to dismiss the indictment, R. 640, is denied. The pretrial conference remains scheduled for February 4, 2025.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: December 16, 2024